<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY GARCIA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 15-1850 (ES)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is an appeal filed by Plaintiff Mary Garcia seeking review of an Administrative Law Judge's ("ALJ") decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reason set forth herein, the Court AFFIRMS the ALJ's decision.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On January 11, 2010, Plaintiff filed a Title II claim for DIB alleging disability for a closed period from October 9, 2008 to August 25, 2010. (D.E. No. 5, Administrative Record ("Tr.") at 138). The claim was initially denied on April 22, 2010. (*Id.* at 89). Plaintiff's claim was denied upon reconsideration on August 10, 2010. (*Id.* at 96). On October 5, 2010, Plaintiff filed a request for a hearing before an ALJ. (*Id.* at 99).

Plaintiff's hearing was conducted on September 2, 2011. (*Id.* at 32). On October 25, 2011, ALJ Norman R. Zamboni issued a decision finding that Plaintiff was not disabled. (*Id.* at 32-46). Plaintiff subsequently filed the instant appeal.

In September 21, 2015, Plaintiff filed a brief in support of her appeal. (D.E. No. 10, Brief on Behalf of Plaintiff ("Pl. Mov. Br.")). Defendant filed an opposition brief on November 20, 2015. (D.E. No. 11 Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Opp. Br.")). The case is now ripe for determination.

## II.     LEGAL STANDARD

### A. Standard of Awarding Benefits

To receive DIB under Titles II, a plaintiff must show that she is disabled within the definition of the Act. See 42 U.S.C. § 423. In applying for DIB, claimants must also satisfy the insured status requirements enumerated in 42 U.S.C. § 423(c).

Disability is defined as the inability to, "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The individual's physical or mental impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(a).

The Social Security Act has established a five-step sequential evaluation process to determine whether a plaintiff is disabled. 20 C.F.R. § 404.1520(a)(4). If the determination at a particular step is dispositive of whether the plaintiff is or is not disabled, the inquiry ends. 20 C.F.R. § 404.1520(a)(4). The burden rests on the plaintiff to prove steps one through four. *See*

*Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At step five, the burden shifts to the Commissioner. *Id.*

At step one, the plaintiff must demonstrate that she is not engaging in any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. 20 C.F.R. §§ 416.972(a), (b). If an individual engages in substantial gainful activity, she is not disabled under the regulation, regardless of the severity of her impairment or other factors such as age, education, and work experience. 20 C.F.R. § 404.1520(b). If the plaintiff demonstrates she is not engaging in substantial gainful activity, the analysis proceeds to the second step.

At step two, the plaintiff must demonstrate that her medically determinable impairment or the combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Slight abnormalities or minimal effects on an individual's ability to work do not satisfy this threshold. *See Leonardo v. Comm'r of Soc. Sec.*, No. 10-1498, 2010 WL 4747173, at *4 (D.N.J. Nov. 16, 2010).

At step three, the ALJ must assess the medical evidence and determine whether the plaintiff's impairments meet or equal an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ must "fully develop the record and explain his findings at step three." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000).

If a plaintiff is not found to be disabled at step three, the analysis continues to step four in which the ALJ determines whether the plaintiff has the residual functional capacity ("RFC") to

3

perform her past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).    If the plaintiff lacks the RFC to perform any work she has done in the past, the analysis proceeds.

In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the plaintiff can perform based on her RFC and vocational factors.  20 C.F.R. § 404.1520(a)(4)(v).

### B.  Standard of Review

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision."  *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder."  *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3rd Cir. 1992).

### III. ALJ Norman R. Zamboni's Decision

ALJ Norman R. Zamboni held a hearing following Plaintiff's request. (Tr. at 32-46). Following the hearing, the ALJ found Plaintiff not disabled under the Social Security Act. (*Id.* at 46). At step one, the ALJ determined that Plaintiff met the insured status requirements of the Act and that Plaintiff had not engaged in any substantial gainful activity since the alleged onset date of disability. (*Id.* at 39). At step two, the ALJ determined that Plaintiff had the following severe impairments: chondromalacia of the left knee, lumbar disc herniation with radiculitis, cervical radiculopathy, obesity, major depression, and panic disorder. (*Id.*).

At step three, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 40).

At step four, the ALJ determined that Plaintiff had the RFC to:

> lift and carry 10 pounds occasionally; stand and walk 2 hours per 8 hour workday; sit 6 hours per 8 hour workday; occasionally climb stairs and ramps; occasionally balance, stoop, kneel, crouch, and crawl; occasionally use foot controls with the left leg; could not climb ladders, ropes, or scaffolds; and was limited to work involving one or two step instruction.

(*Id.* at 42). Based on this RFC assessment, the ALJ concluded that Plaintiff was unable to perform her past relevant work as a corrections officer during the alleged closed disability period. (*Id.* at 44).

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC, and determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] could perform." (*Id.* at 45). Given these factors, the ALJ concluded that Plaintiff had not been disabled from the alleged closed period of October 9, 2008 to August 25, 2010. (*Id.* at 45-46).

5

**IV.     DISCUSSION**

On appeal, Plaintiff argues that ALJ committed reversible error.  In particular, Plaintiff asserts that the ALJ: (1) ignored the weight of the substantive credible evidence presented by Plaintiff, (Pl. Mov. Br. at 4-7); and (2) improperly discredited the effects of Plaintiff's pain, (*id.* at 8-10).  The Court addresses each argument in turn.

**A.     Weight of the Credible Evidence Presented by Plaintiff**

Plaintiff contends that the ALJ committed reversible error by ignoring the weight of the substantive credible evidence presented. (*Id.* at 4).  In particular, Plaintiff asserts that "[t]he finding of the administrative law judge that the plaintiff could engage in some form of substantial gainful activity is without factual support in the record and violates the substantial evidence rule." (*Id.*). Moreover, Plaintiff claims that "[t]here are no medical reports indicating that the plaintiff could be employed." (*Id.*).

The Court concludes that the ALJ's disability determination was supported by substantial evidence.  Indeed, Plaintiff fails to direct the Court to any medical evidence in the record that supports her position—which is her burden at steps one through four.  *See Bowen*, 482 U.S. at 146 n.5.  In particular, Plaintiff fails to cite to the credibility evidence she believes the ALJ ignored. Nevertheless, the Court's review of the medical record necessitates an affirmance of the ALJ's decision.

At step three, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments." (Tr. at 40). This conclusion was supported by substantial evidence. The ALJ considered listings 1.02A and 1.03 under the Musculoskeletal listing. (*Id.*). Ultimately, the ALJ concluded that Plaintiff did not meet or equal these listings because she reached maximum medical improvement three months after her first surgery and seven and half months after her second surgery. (*Id.*).  In addition, the

ALJ noted that she had difficulty walking and standing, but that the record was devoid of any indication that she was unable to ambulate effectively without using an assistive device. (*Id.*).

Next, the ALJ considered spine disorders under listing 1.04 regarding Plaintiff's allegations of neck and back pain. (*Id.*). The ALJ noted that an MRI of Plaintiff's spine only showed signs of mild degenerative disc disease, mild right-sided foraminal narrowing, and no stenosis. (*Id.*). Moreover, the ALJ noted that "Concentra, Dr. Roth, Dr. Reiber, and Dr. Ducey indicate that the claimant could do light or modified duty." (*Id.*).

The ALJ also considered Plaintiff's mental impairments, both singly and in combination, and concluded that they did not meet or equal the criteria for listing 12.04 and 12.06. (*Id.*). In particular, the ALJ gave Dr. Jose Soto-Perollo—Plaintiff's treating source—less weight. (*Id.* at 41). Indeed, Dr. Soto-Perollo found limitations in Plaintiff's memory, understanding, social functioning, and adaption, but failed to provide support for this determination. (*Id.*). By contrast, Dr. Soto-Perollo's notes indicate that Plaintiff was stable with medication and able to pursue a college education. (*Id.*). Moreover, Dr. Soto-Perollo's report was a "check the block" form that was unsupported by specific findings. (*Id.* at 44).

Finally, the ALJ considered Plaintiff's obesity in conjunction with her other impairments. The ALJ noted that there is no listing for obesity, but that it may increase the severity of other impairments. (*Id.* at 41). Nevertheless, the ALJ concluded that when Plaintiff's obesity is considered in combination with Plaintiff's other impairments, Plaintiff does not meet or equal the listed impairments. (*Id.*). In support, the ALJ indicated that Plaintiff was able to pursue college courses online, drive, and care for her personal needs. (*Id.*).

In light of the above discussed medical evidence, the Court concludes that the ALJ's determination at step three was supported by substantial evidence. The Court also concludes that the ALJ's RFC assessment was supported by substantial evidence, as outlined below.

### B. Credibility Determination as to the Total Disabling Effects of Plaintiff's Pain

Next, Plaintiff argues that the ALJ erred by improperly discrediting the total disabling effects of Plaintiff's pain, as manifested by her physical and psychiatric symptoms. (Pl. Mov. Br. at 8). In particular, Plaintiff contends that the ALJ "erred in giving little or no weight to the opinions to all of the doctors of record, and . . . discrediting the plaintiff in light of her own testimony as to her complaints of pain." (*Id.* at 9).

"Where . . . the ALJ has articulated reasons supporting a credibility determination, that determination will be entitled to great deference." *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 188-89 (3d Cir. 2007). Indeed, to determine the proper weight to be given to a medical opinion, the ALJ is required to weigh all of the evidence and resolve any material conflicts. *See Richardson*, 402 U.S. at 399. A reviewing court cannot reweigh the various medical opinion in the record. *See Williams*, 970 F.2d at 1182. Here, the Court concludes that the ALJ's determinations were supported by substantial evidence.

To begin, Plaintiff fails to direct the Court to any evidence of the total disabling effects of her pain. To the contrary, the ALJ relied on numerous reports indicating that Plaintiff could work in a reduced capacity despite her pain. The only opinion that the ALJ discredited was Dr. Soto-Perollo's report regarding Plaintiff's mental impairments

In his RFC assessment, the ALJ considered Plaintiff's allegations of pain. On October 8, 2008, Plaintiff injured her knee while working as a corrections officer. (Tr. at 248). The Concentra Medical Center diagnosed her with a knee contusion, but released her to work in a modified

8

capacity—sitting fifty percent of the time and wearing a brace. (*Id.* at 43, 274). On November 11, 2008, Concentra Dr. Neil Roth noted that Plaintiff "had significant pain" but was "able to ambulate afterwards . . . and feels that she is better than when she first came in." (*Id.* at 253). Dr. Roth returned Plaintiff to work with some restrictions—modified duty without climbing or standing. (*Id.* at 42, 253). In December of 2008, Plaintiff returned to Dr. Roth, who noted that she was still having pain in her knee, and scheduled a procedure to alleviate the pain. (*Id.* at 255). Nevertheless, Dr. Roth again opined that Plaintiff could return to work in a modified capacity. (*Id.* at 256).

Also in December 2008, Plaintiff visited Dr. Michael H. Reiber, who opined that the examination of "her left knee is quite benign." (*Id.* at 264). Dr. Reiber stated that there was no visible swelling and that Plaintiff had a full range of motion. (*Id.*). Ultimately, Dr. Reiber indicated that Plaintiff could perform light work, but since there was no light duty available, he opined that she should not return to work. (*Id.* at 264, 42).

On December 23, 2008, Plaintiff visited Dr. Stephen A. Ducey for a consultation. (*Id.* at 298). Dr. Ducey indicated that Plaintiff had a normal gait, that her neck had good range of motion, and that her left knee strength was "5/5." (*Id.* at 299). Dr. Ducey also noted that there was mild swelling. (*Id.*). On a follow-up visit in January 2009, Dr. Ducey scheduled surgery on Plaintiff's left knee. (*Id.* at 294). However, he opined that Plaintiff could return to work in a light duty capacity. (*Id.*).

On January 29, 2009, Dr. Ducey performed surgery on Plaintiff's left knee. (*Id.* at 284). On March 27, 2009, Plaintiff told Dr. Ducey that she felt little pain. (*Id.* at 329). Dr. Ducey opined that Plaintiff could return to work in a light duty capacity. (*Id.* at 331). And finally, on May 8,

9

2009, Dr. Ducey indicated that Plaintiff reached medical maximum improvement, and opined that Plaintiff could return to full work duty.  (*Id.* at 43, 383, 346).

In August of 2009, Dr. Peter A. Salob performed a second surgery on Plaintiff's left knee. (*Id.* at 443).  Dr. Salob opined that Plaintiff was doing well following the surgery and that her pain was well controlled with medication.  (*Id.* at 444).  In March 2010, Dr. Salob opined that Plaintiff was really starting to get better. (*Id.* at 452).  Indeed, Plaintiff told Dr. Salob that she was going to the gym.  (*Id.*).

Moreover, on April 16, 2010, medical consultant Dr. Seung Park opined that Plaintiff could occasionally lift ten pounds and frequently lift less than ten pounds, stand and/or walk at least two hours in an eight hour day, and sit for six hours.  (*Id.* 411-12).  Dr. Park also opined that Plaintiff could occasionally balance, stoop, kneel, crouch, and crawl, but that pushing and/or pulling was limited in her lower extremities. (*Id.* at 412).  Dr. Park reached this conclusion after reviewing treatment and examination source statements in Plaintiff's file.  (*Id.* at 414).

The ALJ reached his RFC assessment after review of the above evidence.  Indeed, the ALJ relied on the reports from Concentra, Dr. Roth, Dr. Reiber, and Dr. Ducey which indicated that Plaintiff could perform light duty.  Moreover, the ALJ noted that his RFC assessment was consistent with Plaintiff's own testimony regarding her functional capacity.  Plaintiff indicated that she could lift up to ten pounds, sit for two hours, stand for thirty minutes, and perform school work on her computer.  (*Id.* at 44).  Plaintiff also indicated that she washed dishes, dusted furniture, did laundry, drove a car, and shopped for food and personal care supplies.  (*Id.* at 185-186).

The ALJ did, however, give less weight to Dr. Soto-Perollo's opinion regarding Plaintiff's major depression and panic disorder.  (*Id.* at 44).  A treating physician's opinion is afforded "controlling weight" if it is "well-supported by medically acceptable clinic and laboratory

10

diagnostic techniques and is not inconsistent with the other substantial evidence in the [the claimant's] case record." *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence." *Id.*

Here, the ALJ indicated his reasons for affording Dr. Soto-Perollo's opinion less weight—lack of support and inconsistencies throughout the record. The ALJ noted that Plaintiff sought treatment from Dr. Soto-Perollo for a short period of time—from March 2010 to June 2010. (*Id.* at 41, 43). During his treatment, Dr. Soto-Perollo stated that Plaintiff had reduced concentration and limited memory, understanding, social functioning, and adaptation, but provided no support for this conclusion. (*Id.* at 44, 430). Indeed, the ALJ noted that Dr. Soto-Perollo's "statements are not supported by treatment notes or by much rationale." (*Id.* at 44). Moreover, the ALJ also noted that Dr. Soto-Perollo's report was a "check the block" form that was not supported by any specific testing or findings. (*Id.*).

In further support of his decision to afford less weight to Dr. Soto-Perollo's opinion, the ALJ noted inconsistencies in the record. Again, Dr. Soto-Perollo opined that Plaintiff had reduced concentration and limited memory, understanding, social functioning, and adaptation; but according to the ALJ, this conclusion was inconsistent with Dr. Soto-Perollo's exams, which show no cognitive problems and intact concentration. (*Id.* at 43). Moreover, during the course of her treatment with Dr. Soto-Perollo, Plaintiff stated that she was fine and had no complaints. (*Id.* at 43). Plaintiff was also able to pursue a college education online during her treatment with Dr. Soto-Perollo. (*Id.* at 44). Importantly, the ALJ noted that Dr. Soto-Perollo's opinion was inconsistent with Dr. Ernesto L. Perdomo, who indicated that Plaintiff had mild to moderate panic attacks and major depression. (*Id.* at 44, 464). Dr. Perdomo found that Plaintiff had a Global

11

Assessment of Functioning score of 70—which is described as some mild symptoms or some difficulty in social, occupation, or school functioning, but generally functioning pretty well.

Based on the above evidence, the Court concludes that the ALJ's RFC assessment was supported by substantial evidence. Indeed, substantial evidence supported the ALJ's decision to afford lesser weight to Dr. Soto-Perollo's opinion regarding Plaintiff's mental impairments. Moreover, Plaintiff's own statements regarding her functional capacity support the ALJ's RFC assessment. Accordingly, the ALJ did not err by improperly discrediting the total disabling effects of Plaintiff's pain.

## V.  CONCLUSION

For the foregoing reasons, the Court affirms the ALJ's opinion. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**